# WM. MATTIMORE v. CITY OF ERIE.

## APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 28, 1891—Decided October 5, 1891.

1. In trespass for negligence, an instruction that, although the defendant may have been guilty of negligence, "yet if the plaintiff himself was guilty of any negligence which materially contributed to the happening of the injury, then he cannot recover," is error: Monongahela City v. Fischer, 111 Pa. 9; Oil City Supply Co. v. Boundy, 122 Pa. 449.
2. And such erroneous instruction is not cured by a direction, in a subsequent part of the charge, that if the jury should find that the plaintiff "was playing with the wheel, and attempted to move it and thereby caused it to fall, he would be guilty of contributory negligence and could not recover."
(a) Plaintiff brought trespass against a city for negligence in suffering machinery to remain near a sidewalk on a public lawn, the machinery being kept there by an abutting owner, and in such position that a large wheel fell upon and injured the plaintiff, a boy of nine years, who stepped off the walk and touched it:
3. The wheel not being upon the public highway, and there being evidence that no like accident had previously occurred from such use of the lawn, the municipality could not be held liable, in the absence of evidence of distinct notice of the negligent manner in which the machinery was placed in position by the owner.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 382 January Term 1891, Sup. Ct.; court below, No. 192 September Term 1885, C. P.

On August 14, 1885, William Mattimore, by his next friend Thomas Mattimore, brought trespass against the city of Erie, to recover damages for negligence causing injury to the plaintiff. The negligence charged in the statement of claim was the suffering of the sidewalk along the north side of Tenth street, between Holland and German streets, to be in a dangerous and unsafe condition to walk upon, over or across, by reason of obstructions placed and allowed to remain on, at, or near said sidewalk. Issue.

Statement of Facts.

At a second trial, on October 23, 1890, the case shown was substantially as follows :

Tenth street, in the city of Erie, as laid out, is one hundred feet wide. Under the act of April 11, 1866, P. L. 728, the roadway is made forty feet wide, the sidewalks ten feet wide, and the space of twenty-five feet, between the sidewalk and roadway on each side of the street, is to be kept improved by sodding and planting trees and shrubbery, this improved space to be protected by a railing or chain supported by posts. The expense of these improvements and protection is collectible from the abutting owners, who, under the fourth section of the act, may severally maintain actions for trespass committed within the enclosures.

The Stearns Manufacturing Company had their works for the making of portable saw-mills and machinery connected therewith on the north side of Tenth street, between Holland and German streets, fronting 577 feet on Tenth street, and was in the habit of using the lawn in front of its premises between the sidewalk and the roadway as a place to store manufactured machinery prior to shipping the same.

On June 11, 1883, twenty-six property owners on Tenth street presented their petition to the mayor and councils, setting out that as soon as the act of 1866 was passed, the property owners on said street complied with the same, establishing lawns at their own expense, to beautify said street in accordance with the act; that the said company for a number of years had used the lawn in front of their premises as a place for the storage of machinery in the manner stated, and the property of the owners on the south side of the street was decreased in value on account thereof; that the storage of this bulky and varied machinery " is also dangerous to the lives of all those who have to pass with their teams along the street; runaways have occurred several times by the horses taking fright on sight of the boilers, smoke stacks, etc., although fortunately no lives have been lost;" praying for the removal of the nuisance and trespass and the restoration of said lawns. In the fall of 1883, under orders from the city officials, the manufacturing company cleared the lawn in front of their property, but in the next spring again occupied the lawn in the same manner as before.

Charge of Court below.

In July, 1884, the company placed a fly-wheel, between three and four feet in diameter, on a board on the lawn near the sidewalk, and on its pulley-face.   On the afternoon of July 20, 1884, according to the testimony of the plaintiff, the latter was passing along the sidewalk, and stepped aside to avoid a baby-carriage.   Going against the wheel, the latter fell over toward the sidewalk and upon the plaintiff, inflicting upon him serious injuries.   The defendant adduced testimony tending to show that the plaintiff was playing with the wheel at the time. There was proof that no accident of the kind had ever occured before, and there was no evidence of any notice to the city that the lawn was being used in a manner dangerous to persons passing along the sidewalk.

The court, GUNNISON, P. J., charged the jury in part as follows :

It is the duty of the city authorities to take care of the sidewalks, streets and thoroughfares, and to examine them sufficiently often to know whether there are any dangerous obstructions upon them or any dangerous condition of them, or any dangerous use of them, which would be apparent from an ordinary inspection of them ; and if they do not give the roadways, streets and thoroughfares such examination, then they would be responsible for any injury that was caused by such dangerous use, which was continued long enough by the owner of the premises or by any one else, to, charge them with constructive notice ; that is, long enough so that they ought to have known it, whether they did know it or not.   The law says that what they ought to know they are presumed to know ; and if by ordinary care they could have known this dangerous use, then they are charged with notice of it, whether they did know it or not ; and that is what is called constructive notice.

The defendant has asked the court to instruct you, in the points presented, (and in their argument they have taken that position,) that the city would not be liable unless it is shown by the evidence that this particular wheel which caused the injury was in a dangerous position, and had remained in that dangerous position sufficiently long to charge the city with notice of its condition.   This the court declines to do.   [It is sufficient if the Stearns Manufacturing Co. were accustomed

Charge of Court below.

to use the lawn in a like dangerous way, storing other wheels there, if not the same wheel, a sufficient length of time to charge the city with notice. The continuous, habitual, and open use of the lawn in a dangerous way, similar to the use that was made of it by means of which this injury occurred, if continued long enough to give the city constructive notice of that use, is sufficient to charge them with the consequences of it. Whether the lawn was so used by the Stearns Manufacturing Co. is a question for you to decide. Whether they were in the habit of placing machinery and wheels, similar to the wheel that caused the injury, upon the lawn in close proximity to the sidewalk, so that it would be dangerous to passers-by, or not, is for you to determine. Upon that question you have the testimony of a number of witnesses. Mrs. Mattimore, Mr. Mattimore, Mr. Carney, Mr. Fagan, Mr. Mangold, and perhaps one or two other witnesses, testified to you that, for several months prior to the happening of the accident, the company had been in the habit of placing wheels (some larger and some smaller than the one which caused this accident) upon the lawn close to the sidewalk, so that if they should tumble over it would endanger any one who was passing along the sidewalk, without having them sufficiently secured so that they would not fall over.] [7] Now if you believe that testimony you are instructed that that would be sufficient to justify you in finding that the city had constructive notice of that dangerous condition of the sidewalk ; and if they did have constructive notice of it, it was their duty to see to it that that use of it was stopped, that the safety of people passing upon the sidewalk might not be endangered.

On the other hand, you have the testimony of Mr. Barnhurst, and several other witnesses, who say that they saw the machinery there ; and Mr. Barnhurst especially tells you that he inspected the machinery almost daily that was upon the lawn, and that if he saw any that was in an apparently dangerous situation, he tested it to find whether it was dangerous or not; and that in every instance he found it perfectly secure, and no danger of it toppling over. You have the testimony of other witnesses, that with the exception of this one occasion, no wheel was ever known to fall over which had been placed by the company upon the lawn. That is not conclusive evi-

Charge of Court below.

dence that there was not any dangerous use made of the lawn by the company, but it is evidence which you will be justified in considering in arriving at the truth in regard to that question.

Now, it appears from the evidence that not only wheels were placed upon the lawn, but that articles of machinery, engines and engine beds and saw-mill machinery; and one or two witnesses testified that there were boilers or portions of boilers stored upon the lawn and against the building on the north side of the sidewalk. It may be that the company had no right to use that lawn for storing such articles of machinery upon; it may be that they were using it in an unlawful manner, but that would be no reason for making the city responsible in this case, if that unlawful use did not contribute or was not such a use of this lawn, or was not similar to the use which contributed to this injury. In other words, although they might violate the law in one respect, it would not be reason for visiting them with the consequences of neglect in another respect. The engines and saw-mill machinery and a great many of the articles which were placed upon the lawn, the testimony shows, could not have possibly fallen upon any one to injure them; so that, although they may have had the lawn covered with such machinery as that, it would not be such a use of it as would give the city notice of such dangerous condition. It was only such use of it as would be dangerous to passers-by, similar to the storing of wheels in the manner in which this particular wheel was stored, if you find that it was insecurely placed, which would operate as constructive notice to the city.

Now, while there is no contradiction of the fact that the plaintiff was injured, and no contradiction of his allegation that he was injured by this wheel, the defendant has offered testimony to show you that the injury resulted in part from his playing with the wheel, instead of by an accidental touching of it and causing it to topple over on to him.

[It is a principle of law that although the defendant in an action of this kind may have been guilty of negligence, yet if the plaintiff himself was guilty of any negligence which materially contributed to the happening of the injury, then he cannot recover, no matter how negligent the defendant may have been.] [8] Now, if you find from the testimony of Mrs. Richter, that while she was on the other side of the street, the young

Charge of Court below.

boy was playing with the wheel, inside of it, and attempting to move it, and that by so doing he caused the wheel to fall down, and received the injury that he did, then he would be guilty of contributory negligence; and even though the wheel was not properly secured, if you find that to be the fact, he could not recover any compensation for the injury that he sustained. He would be guilty of contributory negligence; his own act of playing with the wheel would contribute towards the sustaining of the injury. Mrs. Richter is the only witness who testifies to that fact. She cannot give you the exact time. She says it was either on a Sunday or a holiday. I do not know that she fixes the exact year; but she says that a few days after she saw the young boy playing with the wheel, she heard of the accident to Willie Mattimore, and that is the way she fixes the time. Now, if you believe that she did see a boy playing in that way, and if you believe it was this young boy whom she did see, then it would be your duty to find a verdict for the defendant, because it would show contributory negligence on the part of the plaintiff which helped to cause the injury. Her testimony is inconsistent with the testimony of Willie Mattimore himself, who tells you that he was not playing with the wheel; that he was going along the sidewalk, looking back at the time over his shoulder, and that he accidentally touched either the wheel or the board upon which it rested, and that that caused it to fall over. If his story is true, then there would be no contributory negligence on his part, because it would be doing nothing which was negligent or showed any want of care. If, by merely walking upon the sidewalk he accidentally touched the board upon which the wheel was resting, and that caused it to topple over, that would not be an act of negligence upon his part which contributed to the injury.

[If you find for the plaintiffs upon these points, that the wheel was negligently placed in the position in which it was, and that there had been a similar use of the lawn by the Stearns Manufacturing Co. a sufficient length of time to charge the defendant with notice of that use, then it would be your duty to estimate the damage that was done to the plaintiff; and in doing so you have a right to take into consideration the pain and suffering that he endured, the inconvenience, and also such

Charge of Court below.

permanent loss of earning-power as will prevent his earning full wages from the time he arrives at the age of twenty-one years.   In this action, he could recover no compensation for the loss of earning-capacity before he arrives at the age of twenty-one, because his earnings up to that time would belong to his father, and his father would have to bring a suit for that. This suit is not by his father, but by himself; so that you could only estimate the loss of earning-power after he arrives at the age of twenty-one years.   Now, your verdict in this case should be for such an amount as will compensate him for the pain and suffering and inconvenience, and this loss of earning-power that I have explained; if he is entitled to recover at all, he is entitled to recover for that.   It is not a case in which you can give vindictive or punitive damages.   Where an injury is inflicted by one person upon another in a malicious, cruel or wanton manner, and intentionally, then the law permits the recovery of vindictive or punitive damages in such a sum as will punish the offender for the wrong which he has committed; but where the injury is inflicted without any malice, and not wantonly, cruelly or intentionally, as the evidence shows this injury to have been inflicted, if at all, then all that the jury can give the plaintiff is compensation; not such a verdict as will punish the person who is responsible for the injury, but such as will compensate him for the loss which he has sustained or will probably sustain from the time he arrives at the age of twenty-one, for the remainder of his life.   So that your verdict, if you find for the plaintiff, should be compensation and not punishment.   It should be compensation for the pain and suffering, compensation for the inconvenience, and compensation for the loss of earning-power which the plaintiff has sustained or will probably sustain from the time of his arrival at the age of twenty-one until his death.] [9] . . . . .

Counsel for the defendant have submitted several points upon which they request the court to charge you:

3. To recover in this case, the plaintiff must show that the city authorities had notice, actual or constructive, that the wheel or pulley that caused the injury had been placed on the lawn or sidewalk in such a manner as to be dangerous to the public; and there being no evidence in the case when the said wheel or pulley was placed on the lawn or walk, or that the

Charge of Court below.

city had any notice thereof, the verdict must be for the defendant.

Answer: This point is refused.  As I have already explained in my general charge, it is not necessary to show that this particular wheel had remained in a dangerous position a sufficient length of time to charge the city with notice; but if it is shown to your satisfaction that the company were habitually and continually using the lawn in a like dangerous manner, that would be sufficient to charge the city with constructive notice.[1]

4. That if the lawn were entirely cleared of all obstructions in September, 1883, by direction of the city, and no accident had happened subsequent to that time and prior to July 20, 1884, and no actual notice had been given to the city, the said city could not be charged with notice of a dangerous condition existing in the sidewalk, and the plaintiff cannot recover in this case.

Answer: This point is also refused.  The facts assumed in the point are evidence to show the absence of constructive notice, proper for the consideration of the jury, but they are not conclusive evidence thereof.[2]

6. That, in the absence of evidence to the contrary, the jury must presume that the machinery left on the lawn was placed there in such a manner as not to be dangerous to the public.

Answer: This point is affirmed.[3]

7. That, if the accident complained of happened by reason of the negligence of the Stearns Manufacturing Co., in failing to properly secure the wheel or pulley by which the injury was inflicted, then the Stearns Manufacturing Co. is liable therefor, and the plaintiff cannot recover against the defendant in this case.

Answer: If the accident happened by reason of the negligence of the Stearns Manufacturing Co., they are liable therefor, in the absence of contributory negligence on the part of the plaintiff; and the plaintiff cannot recover against the defendant in this case without showing that it had either actual or constructive notice of the habitual dangerous use by the Stearns Manufacturing Co. of the lawn and sidewalk.

8. That, under the act of April 11, 1866, and the ordinance of the city of Erie, the public were not entitled to use so much of Tenth street as said act provided should be used for lawns,

Charge of Court below.

for public travel; and the fact that adjoining owners deposited machinery thereon and made use of said lawn for private purposes, even if said use was unauthorized by law, will not make the city of Erie liable for damages in this case, unless it be shown that the proper municipal authorities not only had notice of such use, but also that such use was dangerous to the public; and there being no evidence in this case that any one had ever been injured by the machinery placed on the lawn by the Stearns Manufacturing Co., prior to the injury now complained of, or that said machinery was placed on the lawn in such a manner as to be dangerous to the public, the verdict must be for the defendant.

Answer: The unauthorized use of the lawn by the Stearns Manufacturing Co. will not make the city of Erie liable, unless the jury find that such use was dangerous, and was so long continuous and apparent as to charge the city with constructive notice thereof. The fact that there is no evidence that any one had ever been injured by the machinery placed on the lawn by the Stearns Manufacturing Co., prior to the injury now complained of, is evidence that there was not such continuous apparent use of the lawn as amounted to constructive notice to the defendant, but is not conclusive evidence thereof. The evidence as to whether the Stearns Manufacturing Co. did so use the lawn prior to the injury now complained of, is conflicting, and the question is one of fact to be determined by the jury.

9. That, there being no evidence that the wheel or pulley, which caused the injury complained of, had been in the position which it occupied when it fell on the plaintiff, for any length of time, there has been no constructive notice of the alleged dangerous condition of the sidewalk.

Answer: This point is refused.[4]

12. That there is no evidence in this case which would justify the jury in giving damages for loss of earning power.

Answer: This point is refused.[5]

13. That, under all the evidence, the verdict must be for the defendant.

Answer: This point is refused.[6]

—The jury returned a verdict in favor of the plaintiff for $2,100. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1-6. The answers to the defendant's points.[1 to 6]

7-9. The portions of the charge embraced in [  ] [7 to 9]

*Mr. E. A. Walling* (with him *Mr. Joseph P. O'Brien* and *Mr. John P. Vincent*), for the appellant.

That the presence of the wheel on the lawn was not an obstructive nuisance per se, counsel distinguished North Manheim Tp. v. Arnold, 119 Pa. 380, and cited Allegheny City v. Zimmerman, 95 Pa. 287. That the instruction as to contributory negligence, was error: Railroad v. Norton, 24 Pa. 465; Monongahela City v. Fischer, 111 Pa. 9; Oil City Sup. Co. v. Boundy, 122 Pa. 449; Brown v. Clark, 14 Pa. 469, 475.

*Mr. George A. Allen* (with him *Mr. L. Rosenzweig*), for the appellee.

OPINION, MR. JUSTICE GREEN:

We are obliged to sustain the eighth assignment of error.

The learned court below, in the general charge to the jury on the subject of contributory negligence of the plaintiff, said: "It is a principle of law that, although the defendant in an action of this kind may have been guilty of negligence, yet if the plaintiff himself was guilty of any negligence which materially contributed to the happening of the injury, then he cannot recover, no matter how negligent the defendant may have been." This is in direct conflict with at least two of our recent cases: Monongahela City v. Fischer, 111 Pa. 9; Oil City Supply Co. v. Boundy, 122 Pa. 449. In both these it was held that any limitation upon the effect of any degree of contributory negligence of the plaintiff, as defeating his right of recovery, was vicious, and could not be tolerated. In the first of them the present Chief Justice said: "But if we substitute the word 'material' for the word 'any,' we practically abolish the rule, for a jury can always find a way to avoid it. The rule itself is valuable, and rests upon sound principles. We are not disposed to allow it to be undermined." It is contended, however, that the law was correctly stated in the subsequent part of the charge, and therefore the jury was not misled, or may not have been misled by the erroneous instruction. Upon examining the charge, however, we find that the

only portion of it in which the legal principle is stated is the part above quoted, and there the error distinctly appears in the statement of the principle itself and as a part of it.    There is no qualification of it anywhere else in the charge.    What follows is merely by way of illustration, as applied to the facts of the present case.    The learned judge did tell the jury that if they found that the boy was playing with the wheel, and attempting to move it, and thereby caused it to fall, he would be guilty of contributory negligence and could not recover.    But under the charge as it then stood, it would be quite possible for the jury to find that, although the boy was playing with the wheel, his action did not materially contribute to the injury, and therefore they could render a verdict in his favor.    There was evidence that the wheel was very insecurely placed in its position, and tilted over upon the least touching of it; and the jury may have very naturally thought its insecure position was more material in producing its fall than the boy's playing with it.    It is this very opportunity to misapply the law, if degrees of contributory negligence are tolerated, which requires from the court a rigid adherence to the rule which forbids a recovery by a plaintiff in an action for negligence, who has contributed in *any* degree to his own injury.

For some unexplained reason, the present action was not brought against the parties who were guilty of the actual negligence which caused the plaintiff's injury.    It was brought against the city instead of the Stearns Manufacturing Company. The conditions of liability are very different in the case of the city from those which are controlling in the case of the company.    The liability of the latter depends only upon the fact of their negligence resulting in the plaintiff's injury.    But the liability of the city is not a necessary consequence of the mere neglect of the company.    Something more is required to be proved in the action against the city than the fact that the company was guilty of the negligence which resulted in the plaintiff's injury.    Other elements enter into the inquiry as to the responsibility of the city.

The city had nothing to do with the placing of the wheel which fell upon the plaintiff, and therefore cannot be charged with the consequences which resulted from its negligent placing.    The wheel was not standing in any part of the public

highway; and therefore, the mere fact of its being where it
was did not contribute to an obstruction to the travel on either
the road or the sidewalk.    While it must be conceded that a
municipality is chargeable with the consequences of the pre-
sence of an actual obstruction in the highway, as soon, at least,
as it can be said to have knowledge of the obstruction, there
is scarcely a parallelism between the conditions of liability in
such circumstances, and those which are required in such a
case as this.    Of course, if this wheel had been upon private
grounds, it will not be pretended that the city would be re-
sponsible, even though it stood very near to the highway.
Being upon ground which, though public, was not in use as a
highway, it certainly does not follow, by any necessary infer-
ence, that the city would be liable upon the principle that it
is an obstruction to the highway.    It is plain that, as the in-
jury in question was not the result of the mere presence of the
wheel on the lawn, the city is not liable because of such pre-
sence only.    We think it follows, hence, that the city is not
liable for the negligence of placing it, unless it had at least dis-
tinct notice of that particular negligence in the placing of either
this wheel or of other wheels.    There was not a particle of evi-
dence of any such notice as this in the case, either as to this
wheel or others.    On the contrary, there was ample proof that
no accident of this kind had ever occurred from the placing of
any of the machinery, and there was no plausible or possible
ground of inference that an accident would happen simply be-
cause of the manner in which the machinery was placed upon
the lawn.    If, then, the city's liability must be worked out as
the consequence of a disregarded notice, such notice must have
been directed to the particular negligence which produced the
injury, and of that kind of notice there was no proof.    The
mere fact of the presence of the machinery might give rise to
a duty to remove it, but that is not the duty whose violation
occasioned the injury, and it is inconsequential as a source of
legal liability.    The petition of citizens, presented to city
councils, during the year before the accident, was rather a re-
monstrance against the presence of the whole body of machinery
on the lawn, as being an unsightly spectacle and injurious to
the rights of property owners, than as a source of danger to in-
dividuals.    It was charged in the petition that the storage of

'such a great quantity of machinery so near the road, would tend to frighten horses and cause runaways, but there was no specific notice of any special negligence in the manner of placing particular articles.

We are of opinion, therefore, that the facts necessary to give rise to the liability of the city for this particular injury do not appear in the testimony; and, as there was no proof that the wheel that caused the injury had been placed in its position any considerable length of time before the accident, we think the first, second, fourth, sixth, and seventh assignments are sustained.    We do not sustain the fifth and ninth assignments, as there was some evidence of a permanent loss of earning power to some extent, and its effect was for the jury.

Judgment reversed.