KALOVSKY, A MINOR, *v.* THE MEYER DAIRY PRODUCTS COMPANY.

(Decided September 17, 1928.)

*Messrs. Payer, Minshall, Karch & Kerr,* for plaintiff in error.

*Messrs. Dustin, McKeehan, Merrick, Arter & Stewart,* for defendant in error.

SULLIVAN, P. J.    This cause is here on error from the common pleas court of Cuyahoga county, and it is here sought to reverse the verdict of the jury and judgment of the court in favor of defendant, the Meyer Dairy Products Company, a corporation, on the ground, first, that the court erred in permitting a certain map to be offered in evidence; and, second, in instructing the jury upon a special request of the defendant.

Trial was had upon the amended petition, the answer of the defendant, and the reply of plaintiff, and it appears therefrom that on July 27, 1925, in broad daylight, the plaintiff, who was a minor about 15 years of age, in company with another minor of about the same age, was riding on a bicycle in the vicinity of East Fifty-Fifth street and Ensign avenue in the city of Cleveland; the record showing that plaintiff was the owner of the bicycle and at this time was riding on the handlebars of the bicycle, while the pedaling was done by his companion, Isadore Beckenstein.

It is claimed in the petition that, after coming east on Ensign avenue, to its terminus on East Fifty-Fifth street, they turned the bicycle north for a distance of some 30 or 40 feet, when, it is alleged, the bicycle was struck by the trailer of defendant, which was under locomotion by reason of a tractor, as a result whereof the injuries alleged to have been sustained resulted.

The evidence in the case is conflicting as to whether the accident or collision occurred some 30 or 40 feet north of the turn at the intersection of Ensign and East Fifty-Fifth streets, according to the allegations of the petition, or happened at the immediate intersection of East Fifty-Fifth street and Ensign avenue by the bicycle riders colliding with the trailer and tractor while making its way north at Ensign avenue and East Fifty-Fifth street.

The answer of defendant sets up contributory negligence, and there is credible evidence in the record tending to show that the collision occurred by the riders of the bicycle running into the trailer at the intersection and not at a distance some 30 or 40 feet north therefrom where a certain Chevrolet automobile was parked on the east side of the highway.

Thus the question of the location of the collision became an important issue in the case, because, if the collision happened north of the intersection, as plaintiff claimed, the question of contributory negligence would not be serious and the responsibility of the driver of the tractor and trailer would be more acute, but, if the collision took place at the intersection, then the question of contributory negligence was more easily ascertainable, because it would involve the claim that the riders proceeded negligently from Ensign avenue into the trailer that was passing north at the end of Ensign avenue, at the intersection of the two streets.

Upon this question the evidence was very conflicting, and it was one for the jury to decide, but error is not claimed on the ground that the verdict and judgment are clearly and manifestly against

the weight of the evidence, so that we examine the situation as bearing upon the error charged.

Respecting the assignment of error that the court erred in permitting the exhibit known as a map to be offered in evidence, after an examination of the record pertaining thereto for the purpose of deciding whether there was a basis for its introduction, we find that the basis of the introduction of the map was a skid mark at the vicinity of the intersection, which would tend to bear out the defendant's theory that the accident did not occur 30 or 40 feet north of the intersection, but at the intersection, so that the existence of the skid mark would bear directly upon the claim of the defendant that there was contributory negligence on the part of plaintiff, who was riding on the handlebars of the bicycle, in colliding with the trailer as it was passing north in the immediate vicinity of the intersection of the two streets. There is evidence in the record, beyond peradventure, that the skid mark existed. The further impressive testimony appears that the skid mark was 9½ feet long and 11 inches wide, the exact width of the rear tractor tires, and there is positive evidence in the record that at least one witness, whose testimony is not disputed, saw the right wheel of the tractor make the skid mark; and thus we have an actual monument established which bears directly and most intelligently upon the exact location of the accident. This testimony of the actual inspection of the skid mark at the time it was made is corroborated by other witnesses who testified to the existence of the skid mark later in the afternoon.

Now here was an object that had no power of locomotion and therefore could not shift itself. It was

stationary. It was a fact created by reason of the collision, and therefore its accurate representation upon a map was as illuminating to the jury as if they had seen the production of the skid mark.

The evidence of its existence is as incontrovertible as the pavement, the house on the corner, a permanent telegraph pole, or any other object of a permanent constituency.

The skid mark had another ingredient of judicial importance, to wit, the conduct of the operator of the tractor in attempting, at the intersection, to halt its operation, and the inference therefrom was a circumstance and a fact which not only tended to locate the place of collision, but to shed light upon the question of the alleged negligence of the defendant and the contributory negligence of the plaintiff. With these as the main facts, the map was made by a person whose competency is not questioned. Neither is its accuracy questioned. The drawing of the tractor and the trailer in the map is founded upon a fact equal in strength to the existence of the skid mark, because the record determines beyond question that it was the right rear wheel, and nothing else, that made the skid mark. Therefore, the fact that the map shows the tractor and trailer in the position and place where it must have been when the skid mark was made does not make the map judicially ineffective in the trial of the case; and this observation applies to all other objects on the map, which, under the evidence in the case portray conditions and situations which correspond with and were in consonance with the skid mark, the tractor, and the trailer at the time of the collision.

Therefore it is our judgment that the court did not err in the admission of the map. In deciding thus, we keep in mind the law of Ohio, that the admissibility of evidence of this character depends upon the sound discretion of the court, considered in the light of all the circumstances appearing in the record of the case. The court is only responsible for an abuse of sound discretion in application of the rule laid down in the *C., H. & D. Ry. Co.* v. *De Onzo,* 87 Ohio St., 109, 100 N. E., 320, in an opinion written by the late Judge Spear, who was eminent in his power of analysis and his soundness of logic. We quote from him as follows, at page 116 (100 N. E., 322):

"Necessarily some discretion is reposed in the trial court in passing upon the preliminary proof, and determining whether or not the photograph has been sufficiently verified and is pertinent to the issue, but such discretion is a reasonable one and not to be exercised arbitrarily."

The cases upon the subject of the introduction of maps and photographs are conflicting, but we think the greater weight of authority is that they are admissible when the foundation of the drawing centers about some fact which concededly existed at the time of the creation of the issue. The cases cited referring to photographs in criminal cases, or even in civil cases, where dummy figures are used, we do not think are applicable to the one at bar, where the objects in the map are genuine, instead of artificial. Where artificial, a jury could be misled; where genuine, no prejudice could result.

In discussing this question, we have in mind the wording of Section 11364, General Code, which

provides that the court must disregard any error or defect which does not affect the substantial rights of the adverse party. We bear in mind that under such statute no judgment should be reversed for any such evidence. We also apply the principle laid down by Judge Brinkerhoff in *Scovern* v. *State,* 6 Ohio St., 288, wherein it is held that it is the rule in Ohio that a reversal of a judgment on error is not justified unless the record shows, affirmatively, not only that error intervened, but that it was prejudicial to the rights of the party claiming to take advantage of it.

This assignment of error does not affect the substantial rights of the party, even if it were error to introduce the map, because the testimony, which is of similar nature to that revealed by the map, is of such a positive and undisputed character that, while in conflict with certain other evidence, it was equally as impressive before the jury. We must bear in mind that juries are presumed to be intelligent. That is the reason they are selected under the cautious provisions of the law.

But there is another proposition in connection with the introduction of the map that we cannot overlook. While counsel for plaintiff very generally objected to certain proof preliminary to the offering of the map, we find the record silent as to any objection or exception at the time when the map itself was specifically offered as a document in evidence to the jury. When this offer was made, there should have been an objection, and, if the court overruled it, there should have been an exception. Then it would have become a part of the bill of exceptions. A bill of exceptions is not a mere bill or a record; it is a

bill of exceptions; and, while we have reviewed this question as if an exception was taken, it is our judgment that under the record the exception to the introduction of the map was not taken in a manner such as is provided by law, and such as would make it available for consideration by a reviewing court.

The other assignment of error is that the court erred in giving the following instruction:

"The Court says to you, as a matter of law, that no matter what you may find concerning the claimed negligence on the part of defendant, if you find that the defendant has shown by a preponderance of the evidence that plaintiff was guilty of negligence, no matter how slight, which proximately caused or contributed to cause plaintiff's injuries, you will find for defendant."

We have examined this instruction and have come to the conclusion that there is no error in it. Negligence is negligence, no matter how slight; and, if it is the proximate cause of the injury, designating the negligence as slight does not change its character of negligence. It is our judgment also that the authority of *Ochsner, Admr.,* v. *Cincinnati Traction Co.,* 107 Ohio St., 33, 140 N. E., 644, applies to this situation, for we have decided that there is no error in the offering of the map, and this situation leaves the issue of the defendant's negligence discharged from error, because the verdict of the jury was general. It is our judgment that substantial justice has been done, and, thus holding, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.