## Ulmer *v.* Hamilton, Appellant.

Argued November 21, 1955. Before STERN, C. J., STEARNE, JONES and MUSMANNO, JJ.

*Thomas Raeburn White, Jr.,* with him *White, Williams & Scott,* for appellant.

*Lynn L. Detweiler,* with him *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 3, 1956:

In the early morning of January 15, 1953, William J. Ulmer, 62 years of age, plaintiff in this case, was crossing the Red Lion Road, Bustleton, in order to reach the Budd Company plant, in which he was employed, when he was struck by an automobile owned and operated by the defendant George E. Hamilton, against whom a jury in the ensuing lawsuit returned a verdict of $10,000. Upon being refused judgment n.o.v. in the Court below, the defendant appealed here, urging reversal on the ground that the plaintiff was guilty of contributory negligence.

The E. G. Budd Company plant is a large manufacturing establishment, faced on the other side of Red Lion Road, on which it borders, by a large parking lot which accommodates the cars of its employes. In view of the fact that no trolley or bus lines come to this point, practically every employe has to make use of an automobile in going to and from work. On the morning of the accident there were, in the immediate vicinity of the plant, as many as 300 cars headed for parking facilities.

Since the nearest crossway over the highway is at Pine Street, about four blocks distant from the Center Gate of the factory, the employes arriving in cars usually cross on foot from the parking lot to the entrance by traversing the Red Lion Road in a diagonal route. This fact was known to the travelling public generally and to the defendant particularly. While this gener-

alized custom could not of itself stamp the practice with all the privileges attendant upon crossing at a regular intersection, some latitude had to be allowed pedestrians because of geographical necessities which could not be ignored. To require workers hurrying to beat a time clock to proceed four blocks to Pine Street and then back four blocks to the work gate might have well created a situation which in itself would have been conducive to accident. In the case of *Eckert v. Merchants Shipbuilding Corporation,* 280 Pa. 340, the plaintiff was injured while crossing a public street which divided two parts of a large manufacturing plant. It was developed at the trial that the defendant knew that the employees used the street as a crossing. In affirming the verdict recovered in that case, this Court said: "Under the circumstances and considering the customary and large use of the way, the driver was bound to observe the same degree of care as would be required at an ordinary street crossing, and to either stop, when he saw the stationary team, or have his car under such control as he passed it, that he could have stopped it on the shortest possible notice, or otherwise have safeguarded plaintiff in the highway in front of him: [citing cases]. Appellant contends that plaintiff was contributorily negligent. This could not be so, as he had the right to cross the street where he did and when he did and to rely on the driver of the automobile not running him down. While it is set up that he suddenly stepped into the highway in front of the car, the weight of the evidence was to the contrary."

It is also claimed by the defendant in the case at bar that the plaintiff stepped in front of his car, but the weight of the evidence is to the contrary. Observing the rule that in appraising testimony we must read it in the light most favorable to the verdict-winners, we find that the plaintiff, after descending from an automo-

bile on the west side of Red Lion Road (this thorough-fare runs north and south and the plant is located on the east side), walked to the rear of the car, paused to allow three or four cars moving southwardly to pass and then walked toward the center of the road. The defendant's car at this moment was about two car lengths away close to the curb line on the eastern side of the highway. Suddenly it swerved toward the center of the highway and struck the plaintiff with such force that his body was hurled into the air, fell to the hood and then caromed off into the street, with resulting serious injuries. There is also testimony to the effect that just before striking the plaintiff, the defendant's "head was turned to the right as though talking to the people in his car."

An analogous set of facts may be found in the case of *Arnold v. McKelvey*, 253 Pa. 324, 325, where this Court affirmed a verdict on facts which were described as follows: " 'The plaintiffs' evidence tended to show that, when Mrs. Arnold was approaching the west side of the street, she first noticed the car approaching from the north. She then stopped at a place of safety to allow the car to pass by in front of her. Had the car continued in the direction in which it was going at the time Mrs. Arnold stopped, no injury would have occurred to her. But, while approaching Mrs. Arnold, within a short distance of her, the driver of the car turned around, apparently to speak to Mrs. McKelvey, the defendant's wife, seated in the car, and at the same time the car changed its direction, turned to the left, towards Mrs. Arnold, and, before she was able to get back and away, ran against her and severely injured her . . . According to Mary Arnold's testimony, she stopped before reaching a place of danger to allow the car to go by, and, had the car continued in the course it was taking, and not changed its direction and

turned towards the plaintiff, she would not have been injured.' "

The defendant in the case at bar urges judgment n.o.v., not on the basis of lack of negligence on his part, but on the alleged proof of contributory negligence on the part of the plaintiff. Particularly does defendant's counsel argue that the plaintiff failed to look to his right before starting across the street. In analyzing the defendant's contention in this respect, it is to be noted that nothing untoward occurred before the plaintiff reached the center of the highway. In order to charge the plaintiff, therefore, as a matter of law, with contributory negligence, it must be shown that his conduct actually contributed to the negligent happening of the accident. This is the meaning of the phrase *"contributory* negligence." A pedestrian crossing a busy street with a wheelbarrow of watermelons may not be considered the most prudent person in the world, but if he is run down by a car on its wrong side of the road, he cannot per se be declared guilty of contributory negligence since it cannot be shown that his melon-carrying had anything to do with the accident. No pedestrian about to cross a street is required to contemplate all the possible vagaries within the potential orbit of the high-speed and race-track maneuverability of the cars of today. It is enough that he exercise due care, and, having reached the center of the street without mishap and without inviting peril, his safety is to be respected as much as if he were standing on the sidewalk.

In the case of *Goldschmidt v. Schumann,* 304 Pa. 172, the wife-plaintiff crossing a street with her husband did not look before committing herself to the crossing. She said she depended on her husband's looking. The defendant there, as here, charged contributory negligence. In affirming the verdict for the plain-

tiff, this Court said that the wife was warranted in relying upon her husband's observation. But Mr. Justice SHAFFER, who wrote the Opinion for the Court, added that regardless of her husband's actions, the wife could not be declared guilty of contributory negligence under the circumstances because: "Irrespective . . . of her reliance upon her husband's observation, it could not be declared as a matter of law that she was contributorily negligent, because if she had looked before stepping into the cartway, she would have seen only what her husband saw, defendant's car 245 feet away on the other side of the street. In the situation as it would then have appeared to her she would not have been lacking in due care in proceeding just as both she and her husband actually did proceed; hence the failure to look could not be said to be the contributing cause of the accident, and indeed it was not the cause of it at all. A pedestrian about to cross a two-way highway at a regular crossing and seeing an automobile on the other side of the street 245 feet away, which is the side it should traverse, is not bound to stand on the sidewalk until the car passes. It was not her failure to look that caused the accident, nor would her looking have prevented it; the cause was the defendant's unlawful operation of his car. 'The test for contributory negligence is whether the act [alleged as] constituting the negligence contributed in any degree to the production of the injury . . .' "

Applying the cogent reasoning in that case to the facts in the case at bar we cannot declare, as a matter of law, that Mr. Ulmer's actions prior to reaching the center of the highway constituted contributory negligence.' When Mr. Ulmer started across the street the defendant's car was in no more threatening position than it was when Mr. Ulmer reached the center of the street. When the plaintiff arrived at the center of the

highway, the defendant's car was in a posture of innocuous irrelevancy: it was only one foot from the curb on the Budd plant side of the road and there was no more reason to fear it than any other vehicle proceeding on its business at a conveniently safe distance away from the pedestrian-viewer. Without warning and without reason the defendant's car then headed for the center of the highway. The plaintiff tried to step back but before he could do so he was violently struck by the aggressive vehicle moving at from 30 to 35 miles per hour.

It was for the jury, and not the Court, to determine, in view of all these circumstances, whether the plaintiff in any negligent manner contributed to the happening of the accident. We see no error in the decision of the Court below and the judgment is, therefore, affirmed.